Chief Judge Cooke
(dissenting). In a reasonable attempt to promote public order, the Village of Monticello enacted an ordinance prohibiting the possession of open containers of alcoholic beverages in public areas. Whatever may be the wisdom of the village’s action, no basis exists for holding the ordinance constitutionally infirm. Therefore, I dissent and vote to affirm.
Defendant, having been arrested on June 15,1981 in the Village of Monticello and charged with having an open can of beer in his hand, pleaded guilty to violating section 39-3 of the Village Code. That section proscribes the possession in certain public areas of the village of “an open or unsealed bottle or container of an alcoholic beverage”. As the *497 majority properly concludes, defendant’s guilty plea did not foreclose his challenge to the constitutionality of the ordinance under which he was convicted.
The majority errs, however, in holding the ordinance unconstitutional as lacking a rational basis. Under the Twenty-first Amendment to the United States Constitution, the individual States have broad power to regulate the sale and consumption of alcoholic beverages, extending even to the power to prohibit entirely the sale of liquor (see Ziffrin, Inc. v Reeves, 308 US 132, 138). The Supreme Court has stated that “[w]hile the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals” (California v La Rue, 409 US 109,114; see, also, New York State Liq. Auth. v Bellanca, 452 US 714).
Pursuant to this broad power to regulate the sale and use of alcoholic beverages, the village enacted an ordinance proscribing only the possession of open containers of alcohol in public places. The regulation, designed to promote public order, is narrowly drawn. Inasmuch as licensed liquor stores are prohibited from selling liquor in unsealed containers (Alcoholic Beverage Control Law, § 105, subd 11) and bars and restaurants may not sell open containers of alcohol for off-premises consumption (Alcoholic Beverage Control Law, § 106, subd 3), the ordinance does not affect the ability of persons to consume alcohol in licensed establishments or to purchase such beverages for consumption at home. The ordinance merely prohibits a person who buys a sealed container of an alcoholic beverage from opening it in the proscribed public places.
The majority concedes that a municipality may criminally prohibit the public consumption of alcohol (p 495). The ordinance here goes one small step further by proscribing the possession in public of an open container of alcohol. If a prohibition against public consumption is constitutional as *498 a valid exercise of the police power, so must a ban on possession of open containers be valid. Both proscriptions have a rational basis in the same public policy — avoidance of disorders and related problems created by the consumption of alcoholic beverages in unlicensed public places. As with the ban on public consumption, the prohibition against possessing an open container punishes a discrete act, rather than a person’s status.
The majority’s reasoning that “it cannot be presumed that every opening or unsealing is for the purpose of direct human consumption” (p 496) begs the question of the ordinance’s rational basis. Under the majority’s analysis, prohibitions against public consumption would also be invalid. The goal behind both proscriptions is the prevention of public disorder. In neither case can it be said that every instance of public consumption, or every instance of public possession of an open container, disrupts the public order. But the existence of exceptions does not in itself render the perceived public policy worthless. So long as the enactment has “ ‘some fair, just and reasonable connection’ between it and the promotion of the health, comfort, safety and welfare of society”, it should be upheld (People v Bunis, 9 NY2d 1, 4, quoting People v Gillson, 109 NY 389, 401).
Furthermore, as this court unanimously recognized in Lighthouse Shores v Town of Islip (41 NY2d 7, 11-12), an “exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality * * * It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court’s power of inquiry ends.”
Finally, it should be emphasized that there is no evidence in the record that the ordinance has been enforced in an arbitrary or discriminatory manner against only certain portions of the citizenry.
*499 The order of County Court upholding the ordinance should therefore be affirmed.
Judges Wachtler, Fuchsberg and Meyer concur with Judge Jones; Chief Judge Cooke dissents and votes to affirm in a separate opinion in which Judges Jasen and Simons concur.
Order reversed, etc.